UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MARCUS TELESFORD,

         Petitioner,

 -against-

ROBERT KIRKPATRICK, Superintendent
Wende Correctional Facility,[1]

         Respondent.
-------------------------------------------------------------- X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 29 2011 ★
BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

05 Civ. 4437 (BMC)

**COGAN**, District Judge.

  Petitioner, a New York State prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Petitioner is serving a prison sentence of eighteen years to life for second-degree robbery. His claims are that his appellate counsel was ineffective for failing to raise certain arguments on his direct appeal. I hold that that the Appellate Division's rejection of these claims was not contrary to or an unreasonable application of Supreme Court precedent, and the petition is therefore denied.

## BACKGROUND

  The facts of the case are simply stated. On November 7, 2000, petitioner, brandishing a pistol, approached three women on the street and demanded money from them. The women refused, and petitioner grabbed one of them by the arm and snatched a gold chain with a gold nameplate from her neck and fled. When petitioner was apprehended minutes later, the three women identified him, and the arresting officers searched him and found the necklace and pistol,

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Clerk of this Court is directed to change the case caption by substituting petitioner's current custodian, Robert Kirkpatrick, for his previous one, Michael McGinnis.

which turned out to be a pellet gun. He was charged with second degree robbery and related counts.

At trial, petitioner testified and admitted to the robbery and that he had an air pistol during it. His defense was that he never took out the gun during the robbery and it was fully concealed. His testimony was that only after the robbery, as he was fleeing the scene, did the gun fall out of his waistband. It seems obvious that the defense strategy was to concede the conviction for robbery, but because an armed robbery carries a far heavier sentence, petitioner was hoping to limit his conviction to an unarmed robbery.

The jury rejected his testimony and believed that of the victim and two witnesses who testified that petitioner brandished the gun during the robbery. It convicted him of second degree robbery, and the court sentenced him to 18 years to life in prison as a persistent violent felony offender.

On appeal, appellate counsel challenged the admissibility of his prior convictions, both at trial and sentencing, as well as the length of his sentence. The Appellate Division affirmed petitioner's conviction, People v. Telesford, 2 A.D.3d 757, 770 N.Y.S.2d 118 (2d Dep't 2003), leave to app. den., 1 N.Y.3d 635, 777 N.Y.S.2d 33 (2004). It later rejected two separate coram nobis petitions, one of which was prepared by counsel, People v. Telesford, 18 A.D.3d 580, 581, 794 N.Y.S.2d 657 (2d Dep't), leave to app. den., 5 N.Y.3d 795, 801 N.Y.S.2d 816 (2005), and one of which petitioner submitted *pro se*, People v. Telesford, 24 A.D.3d 473, 804 N.Y.S.2d 691 (2d Dep't 2005), leave to app. den., 6 N.Y.3d 839, 814 N.Y.S.2d 87 (2006).

Additional facts will be set forth below as necessary to consider each of the grounds petitioner has raised.

## DISCUSSION

As he did before the Appellate Division in his two coram nobis petitions, petitioner raises seven grounds for relief, all of which allege that appellate counsel was ineffective in different respects. The familiar two-step analysis from Strickland v. Washington, 466 U.S. 668 (1984), governs federal claims of ineffective assistance of counsel, in which a petitioner must demonstrate both that counsel's performance was deficient and that counsel's deficiencies prejudiced the petitioner. Id. at 687. "[A] petitioner may establish constitutionally inadequate performance [of appellate counsel] if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. . . . 'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1985)). Since a habeas petitioner attempting to demonstrate ineffective assistance must overcome both Strickland's and § 2254(d)(1)'s broad and deferential standards, his task is doubly onerous. See Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

In its two summary orders, the Appellate Division rejected all of petitioner's arguments supporting his ineffective assistance of counsel claims on the merits. The Appellate Division's decisions are therefore subject to § 2254(d)(1)'s heightened standard of review. See generally Williams v. Taylor, 529 U.S. 362 (2000). Because petitioner conceded on the witness stand at trial most of the prosecution's case against him, including that he had snatched the complainant's chain and lied before the grand jury, he has a difficult time establishing that the Appellate Division's conclusions regarding the lack of prejudice were contrary to or resulted from unreasonable applications of Supreme Court precedent. But for the reasons below, he also fails

to demonstrate that the Appellate Division unreasonably rejected his assertion that counsel was objectively unreasonable in neglecting stronger arguments than those she included in her appellate submission.

I.      **Invalid Waiver of Immunity**

Petitioner first argues that the waiver of immunity he executed prior to testifying before the grand jury was invalid. A simple review of the minutes from the second grand jury proceeding belies petitioner's claim. Petitioner confirmed on the record that his attorney had explained the waiver of immunity to him. The court also gave him an opportunity to pause the proceedings at any time to speak with his attorney. Finally, petitioner, again on the record, explained the effect of the waiver agreement in his own words, stating that he was "waiving [his] right" and that his testimony would give him an opportunity to "tell [his] side of the story [about] what actually took place on November 7, 2000." Petitioner previously testified before another grand jury, which resulted in an indictment that was later dismissed, and exhibited a clear understanding that anything he said "can be used against [him]."

Petitioner's contention that immunity waivers must be <u>signed</u> in the presence of a grand jury has no basis in New York law. Statutory and case law establish that an effective waiver must be "<u>sworn to</u> before the grand jury conducting the proceeding in which the subscriber has been called as a witness," not signed before the grand jury. N.Y. Crim. Proc. Law § 190.45(2) (emphasis added); see People v. Edwards, 37 A.D.3d 289, 289, 829 N.Y.S.2d 503, 505 (1st Dep't 2007) (a witness's acknowledgement of his signature under oath is sufficient).

Appellate counsel therefore reasonably excluded this ground from her brief to the Appellate Division, and the Appellate Division's decision that appellate counsel was not

ineffective in this respect was not contrary to or an unreasonable application of Supreme Court authority.

## II. Speedy Trial

Appellate counsel, likewise, had no basis to argue that petitioner was denied a speedy trial, and the Appellate Division's rejection of petitioner's argument on this point was not contrary to and did not result from an unreasonable application of Strickland and Barnes. Timeliness of criminal trials, under both the Sixth Amendment to the Federal Constitution and section 12 of New York's Civil Rights Law, is evaluated on a case-by-case basis taking into consideration a number of factors. No one factor is dispositive of timeliness, and they include: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charges; (4) any extended period of pretrial incarceration; and (5) any impairment of defendant's defense." People v. Romeo, 12 N.Y.3d 51, 55, 904 N.E.2d 802, 876 N.Y.S.2d 666, 669-70 (2009); see Doggett v. United States, 505 U.S. 647, 651 (1992) (the balancing test under the Sixth Amendment asks "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.").

Given the lack of precision the law provides for evaluations of timeliness, petitioner's proposed speedy trial claim may not have been frivolous on appeal. But it would nonetheless have been very weak. First, the thirteen months between the filing of the first felony complaint and the beginning of trial was not an uncommonly long period of time. Also, much of the delay was attributable to petitioner himself and even helped him address his pre-trial concerns. For instance, petitioner asked to present witnesses to the second grand jury, one of whom was difficult to locate; after the second indictment was issued, petitioner filed a *pro se* motion to

dismiss in the trial court and later filed a *pro se* habeas corpus petition in the Appellate Division asking to be released; and he substituted lawyers often, necessitating delays to get the new lawyers up to speed. He even represented himself for a period of time. In light of the flimsiness of petitioner's speedy trial claim, the Appellate Division did not err in finding that appellate counsel exhibited justifiable discretion in omitting the argument from her brief.

The only somewhat rigid timeliness requirement New York imposes on prosecutors is one of trial readiness, rather than the commencement of trial. Accordingly, the prosecution must be prepared to proceed to trial within six months of the date felony charges were filed against a defendant plus any period of excludable delay. N.Y. Crim. Proc. Law § 30.30(1)(a); People v. Sinistaj, 67 N.Y.2d 236, 238-39, 492 N.E.2d 1209, 1210, 501 N.Y.S.2d 793, 794 (1986). Time may be excluded from this period for such events as pending pre-trial motions and demands to produce, a defendant's requests for adjournments or, in exceptional circumstances, the prosecution's requests for adjournments. Id. § 30.30(4)(a), (b), (g).

In this case, the proceedings commenced on November 9, 2000, with the filing of the felony complaint, and the prosecution filed a Statement of Readiness with the trial court on November 20. On January 30, 2001, the trial court dismissed the first indictment due to improper cross-examination of a witness before the grand jury, and the new indictment was filed on April 3. The prosecution again filed a Statement of Readiness that same day. At every subsequent court appearance, the prosecution maintained that it was prepared to proceed with trial.

Petitioner argues that a total of 189 days is chargeable to the prosecution. But in making that calculation, petitioner ignores the prosecution's declarations that it was ready to proceed to trial. He also mistakenly attributes to the prosecution the delay of approximately three weeks to

6

disclose the minutes from the grand jury, which had been ordered but not transcribed by the date on which the court ordered that they be disclosed. Similarly, the time it took the prosecution to disclose the prior testimony of a defense witness did not affect the prosecution's readiness. See People v. Corporan, 122 A.D.2d 152, 152-53, 504 N.Y.S.2d 531, 532 (2d Dep't 1986). In short, raising the prosecution's trial readiness on appeal would have been frivolous. Accordingly, the Appellate Division's decision that appellate counsel was not ineffective for failing to raise timeliness was not contrary to or an unreasonable application of Supreme Court authority.

### III. Dismissal of Juror

Petitioner also faults appellate counsel for failing to argue that the trial court improperly dismissed a sworn juror who had a conference that would have conflicted with the trial schedule. The Appellate Division's rejection of this claim was not contrary to or an unreasonable application of Barnes or Strickland. First, the court acted well within its discretion. See People v. Wells, 63 A.D.3d 967, 968, 882 N.Y.S.2d 150, 152 (2d Dep't 2009) (juror properly dismissed because of his concerns about work conflicts); People v. France, 265 A.D.2d 424, 424, 697 N.Y.S.2d 628, 629 (2d Dep't 1999) (juror properly dismissed because of her concerns about class scheduling conflicts). Second, trial counsel did not preserve the claim. There is no misapplication of Supreme Court precedent in the Appellate Division's rejection of this claim.

### IV. Testimony Concerning Uncharged Crimes

The two women who were walking with the victim of petitioner's robbery testified at trial, and their testimony included accounts of petitioner's demand for money while holding a gun. Petitioner argues that this testimony amounted to improper evidence of the attempted robbery of the two companions, for which he was not indicted. However, the companions' testimony was admissible under New York law because petitioner's demand for money while

7

armed was a central fact of the crimes for which petitioner was indicted. See People v. Vails, 43 N.Y.2d 364, 368-69, 372 N.E.2d 320, 323, 401 N.Y.S.2d 479, 482 (1977). And the trial court was solicitous about instructing the jury to consider the evidence only as to complete the narrative of the robbery. Accordingly, the Appellate Division's decision rejecting petitioner's assertion that appellate counsel should have raised this ground was neither contrary to nor did it result from an unreasonable application of Supreme Court precedent.

## V. Brady/Rosario

Under the so-called Rosario rule, the prosecution is obliged to disclose the statements only of people it intends to call as witnesses. N.Y. Crim. Proc. Law § 240.45(1)(a); People v. Rosario, 9 N.Y.2d 286, 289, 213 N.Y.S.2d 448, 450 (1961). Under federal law, Brady v. Maryland, 373 U.S. 83 (1963), and its progeny require the prosecution to disclose only material exculpatory or impeachment evidence. Kyles v. Whitley, 514 U.S. 419, 434-35 (1995). An evidentiary suppression is material when it "undermines confidence in the outcome of the trial." Id. at 434 (internal quotation marks omitted) (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)). Disclosure must be made in time for a defendant to use it effectively. United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001). In order to prove that a disclosure was made too late, a defendant must demonstrate that "earlier disclosure of the evidence would have produced a different result at trial." Id.

Petitioner's Brady and Rosario claim concerns an audiotaped interview of one of the arresting officers. Immediately after petitioner fled, the complainant and the two women with her found a patrol car stopped nearby and reported the incident to the officers in the car, one of whom was named Alfred Vargas. The officers broadcast the description that the three women gave them over the radio, and, based on that description, another officer apprehended petitioner.

Hearing the report of the arrest over the radio, Officer Vargas and his partner arrived at the scene of the arrest to retrieve the complainant's chain, which Vargas did.

Petitioner claimed that several hours later, presumably in an interrogation room at the stationhouse, Vargas stripped petitioner naked and kicked him in the testicles. Before trial, petitioner complained that Vargas used excessive force, and the complaint was investigated by New York City's Civilian Complaint Review Board ("CCRB"). An audio recording was made of the CCRB's interview with Vargas.

The prosecution stated early in the trial proceedings that it did not intend to call Vargas as a witness and did not turn over the tape at that time. After the prosecution rested, defense counsel expressed his intention to call Vargas to undermine the identifications made by the three women, and the trial court ordered the prosecution to make Vargas available. On the morning that Vargas was to testify, the prosecution disclosed the tape and the CCRB investigator's notes. The court gave defense counsel an opportunity to listen to the tape, which was less than five minutes long. Later that day, when defense counsel called Vargas as a witness, he did not ask Vargas about the CCRB proceeding or the facts underlying it.

First, the tape did not implicate Rosario because the prosecution did not call, or plan to call, Vargas as a witness. The tape was also not subject to disclosure under Brady. Assuming, arguendo, that the tape would have been favorable to petitioner, a claim which petitioner makes in the most conclusory terms, the late disclosure was not material. Petitioner testified in his own defense and conceded that he had confronted the three women and snatched the complainant's gold chain from her neck. Moreover, petitioner had been badly discredited on cross-examination at trial by his prior testimony before the two grand juries in which he told a completely different story that did not include the robbery or the gun and in which he testified that he had been

9

wrongfully arrested after emerging from a store. That the tape was disclosed only on the day Vargas testified does not make the suppression any more material. Petitioner has pointed to no statement from the interview that would have been favorable to his defense. Moreover, the lateness of the disclosure is justifiable since the prosecution did not know that defense counsel would call Vargas until the day before he testified.

I therefore see nothing in this scenario that would question the Appellate Division's application of Strickland and render appellate counsel ineffective for failing to raise this claim.

## VI. Conflict of Interest between Petitioner and Trial Counsel and Investigator

Petitioner's next assertion is that appellate counsel should have argued that petitioner had conflicts of interest with both trial counsel and the investigator.

As to the investigator, the record reflects that petitioner complained to the trial court that the investigator, who was appointed by the court, had done "nothing" on his case, apparently because of a dispute over payment. The court offered to appoint a new investigator, and defense counsel indicated that he would seek to do so. The record does not reflect whether defense counsel took any further action. Nevertheless, the court's proposed solution was sufficient to cure any conflict that may have existed. Moreover, given petitioner's concessions on the stand and the fact that he admitted lying to the grand juries, it is hard to imagine what exculpatory evidence the investigator would have found.

Petitioner fares no better with regard to his allegations that trial counsel had a conflict. The alleged conflict arose during a break in trial after the defense rested. During the break, members of petitioner's family physically threatened and shoved defense counsel, telling him that, if petitioner were convicted, counsel would be "in trouble." After the break, counsel

informed the court of the confrontation and that he was shaken by it. Counsel asked for a recess, which the trial court granted.

After the recess, counsel was able to effectively represent petitioner at every subsequent stage of trial and sentencing, winning an adverse inference charge for the Vargas tape, which counsel had, in fact, received and concerned only the police misconduct issue, and making all applicable objections. The court had no reason to substitute counsel. Accordingly, the Appellate Division did not unreasonably apply Strickland in finding that appellate counsel acted reasonably in omitting this ground for relief from her appellate submissions.

## VII. Interested Witness Charge

Finally, petitioner faults appellate counsel for not challenging the "interested witness" charge the trial court gave to the jury.

The interested witness charge was appropriate and hewed closely to the pattern instructions published by the New York Committee on Criminal Jury Instructions. The trial court merely defined what an interested witness was; told the jury that petitioner was an interested witness and that it may consider petitioner's interest in determining his credibility; and admonished the jury that there was no presumption that an interested witness was untruthful. See 1 CJI(NY) 7.03. Moreover, the charge applied to petitioner because he unquestionably had an interest in the outcome of the case. See People v. Agosto, 73 N.Y.2d 963, 967, 538 N.E.2d 340, 342, 540 N.Y.S.2d 988, 990 (1989). The Appellate Division found no merit to petitioner's argument, and its decision is neither contrary to nor an unreasonable application of Supreme Court authority.

## VIII. Petitioner's Second Amended Petition

Petitioner twice asked Judge Trager to stay his case so that he could exhaust state court remedies. When petitioner made his second request, the case was already stayed. Nevertheless, on August 26, 2008, Judge Trager continued the stay and ordered petitioner to file for state court relief within thirty days of the date of the order. Petitioner did not apply for state court relief as ordered. Instead, he filed a letter dated April 6, 2009, asking that his case be reopened as it then stood and explaining that the law firm that was preparing his third coram nobis application "went bankrupt." Then, on April 16, 2010, the Court received petitioner's second amended petition raising two claims regarding sentencing. The two new grounds are (1) the trial court's alleged error in failing to sign petitioner's certificate of conviction and (2) the trial court's alleged error in not holding a hearing at sentencing on prior convictions.

The Court will not consider these claims because they were not timely filed and because they do not relate back to petitioner's other two petitions. First, petitioner did not file for state relief within the thirty days provided by Judge Trager's order and the respondent in this proceeding has been prejudiced by petitioner's delay. Based on petitioner's assertion that he wished to proceed without exhausting new claims, Judge Trager reopened the case, and the respondent answered petitioner's first amended petition. Second, the new claims were not filed within the one-year period of limitations provided by 28 U.S.C. § 2244(d) and do not relate back to the other two petitions. See Fed. R. Civ. P. 15(c); Mayle v. Felix, 545 U.S. 644, 659 (2005). Finally, neither of the new grounds implicates federal law. See Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002).

## CONCLUSION

The petition is denied and the case is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for purposes of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       March 29, 2011